IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TERRON BROWN, | ) | 8:10CV236 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER ON PETITION** |
| STATE OF NEBRASKA, | ) | **UNDER 28 U.S.C. § 2254 FOR A** |
| | ) | **WRIT OF HABEAS CORPUS** |
| Respondent. | ) | |

This matter is before me on the Petitioner Terron Brown's ("Brown") Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus ("Petition"). (Filing No. 1.) After the denial of its Motion for Summary Judgment (filing no. 20), the State of Nebraska (the "State" or "Respondent") filed an Answer by Respondent (filing no. 22), an Initial Brief by Respondent (filing no. 23), a Reply Brief (filing no. 30), and relevant State Court Records[1] (filing nos. 21, 25, and 29). Brown filed a "Response brief to State of Nebraska's motion to dismiss Petitioner's 28 U.S.C. § 2254 Writ of Habeas Corpus." (Filing No. 28.) I, therefore, deem this matter fully submitted.

Brown's petition (filing no. 1), liberally construed, alleges that he is entitled to a writ of habeas corpus because:

| | |
|---|---|
| Claim One: | he was denied due process of law in violation of the Fourteenth Amendment because the prosecution violated the terms of its plea agreement by appealing Brown's sentence after agreeing not to comment on the sentence. |

---

[1]Respondent previously filed State Court Records in support of its Motion for Summary Judgment. (Filing Nos. 13 and 17.) The court also considers these records at this stage of the proceedings.

> Claim Two: he was denied the effective assistance of counsel in violation of the Sixth Amendment because his counsel (a) failed to immediately object to the prosecution's appeal of Brown's sentence because it violated the plea agreement and the issue was not preserved for review; or (b) incorrectly informed Brown that the prosecution would not be allowed to comment on Brown's sentence if he accepted the plea bargain and failed to state all of the terms of the plea agreement on the record.

(Filing No. 11 at CM/ECF pp. 1-2.)

## I. BACKGROUND

### A. Brown's Conviction and Sentence

On June 10, 2005, Brown pleaded guilty to one count of second degree murder in the Douglas County, Nebraska District Court. (Filing No. 17-1, Attach. 1, at CM/ECF p. 22.) The Douglas County District Court thereafter sentenced Brown to a prison term of 30 to 40 years, to run concurrently with Brown's 20-year federal prison sentence. (*Id.* at CM/ECF p. 23.) The State of Nebraska thereafter appealed, arguing that the sentence imposed was excessively lenient. (Filing no. 17-3, Attach. 3, at CM/ECF p. 2.) The Nebraska Court of Appeals agreed with the State of Nebraska. On September 19, 2006, the Nebraska Court of Appeals affirmed Brown's sentence of 30-40 years' imprisonment, but modified the sentence to require that Brown's state prison sentence run *consecutive*, rather than concurrent, to Brown's federal sentence. (*Id.* at CM/ECF p. 7.) In accordance with this modification, on August 11, 2010, the Douglas County District Court entered an "Amended Sentencing Order" sentencing Brown to a prison term of 30 to 40 years, to run consecutively with Brown's 20-year federal prison sentence.

**B.    Brown's Post Conviction Proceedings**

On June 11, 2007, Brown filed a verified motion for post-conviction relief in the Douglas County District Court (the "Post Conviction Motion"). (Filing No. 13-1, Attach. 1, at CM/ECF pp. 13-14.) The Douglas County District Court appointed counsel and allowed the matter to proceed for nearly three years, during which extensive discovery (including depositions) occurred. On January 25, 2010, the Douglas County District Court reversed its earlier opinion appointing counsel and dismissed the Post Conviction Motion. (*Id.* at CM/ECF pp. 24-25.) In dismissing the Post Conviction Motion, the Douglas County District Court cited only Nebraska law and determined that it lacked jurisdiction because Brown was "neither physically in Nebraska nor serving a Nebraska sentence." (*Id.* at CM/ECF p. 24.) Brown appealed the denial of post-conviction relief, and the Nebraska Court of Appeals dismissed the appeal on March 30, 2010. (Filing No. 13-2, Attach. 2, at CM/ECF p. 2.) Brown sought further review in the Nebraska Supreme Court, which denied relief to Brown on May 5, 2010. (*Id.*)

Brown filed the petition in this matter on June 21, 2010. (Filing No. 1.) The respondent thereafter filed its Motion for Summary Judgment, arguing that the petition should be dismissed because Brown is not in "state custody," as required by 28 U.S.C § 2254. (Filing No. 15.) This court denied the Motion for Summary Judgment. (Filing No. 20.) The parties thereafter filed briefs on the merits of the petition and this matter is therefore deemed fully submitted.

## *II.    ANALYSIS*

"Although the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (citing *Lambrix v. Singletary*, 520 U.S.

518 (1997)); *see also Winfield v. Roper*, 460 F.3d 1026, 1038 (8th Cir. 2006) (finding that the record before the court, which included the original transcripts, the record of the state court's evidentiary hearing, the petitioner's habeas petition, and numerous briefs, presented adequate information upon which to base a decision on the merits of the petitioner's claim).

The Respondent argues that Brown's petition is barred by the applicable statute of limitations and that at least one of his claims is unexhausted. The court finds that these procedural issues are complicated, while the merits of Brown's claims are not. As such, the court addresses both of Brown's claims on the merits.

**A.     Claim One**

Brown argues that the prosecution violated the terms of his plea agreement in violation of his Fourteenth Amendment due process rights. (Filing No. 1.) Brown's argument is based on his assertion that the State agreed to remain silent at sentencing, a term which Brown claims the State violated by filing an appeal relating to the leniency of his sentence. (*Id.*) The Respondent argues that it did not agree to remain silent at sentencing, but even if it did, it did not violate that agreement by appealing. As set forth below, the court agrees with the Respondent.

*1.     Applicable Law*

The Supreme Court has long held "that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Put simply, "the State must honor its plea agreements." *Colvin v. Taylor*, 324 F.3d 583, 587 (8th Cir. 2003). However, in the context of plea agreements, the Supreme Court has noted that courts should not "imply as a matter of law a term which the parties themselves did not agree upon."

4

*U.S. v. Benchimol*, 471 U.S. 453, 456 (1985) (finding that government did not violate the plea agreement where it made the agreed-upon sentencing recommendation under Federal Rule of Criminal Procedure 11 even though it failed to make the recommendation "enthusiastically").

The Nebraska Court of Appeals has addressed a nearly-identical situation as Brown's. See *State v. Thompson*, 735 N.W.2d 818, 818 (Neb. Ct. App. 2007). In *Thompson*, the defendant argued that, because the State agreed to remain silent at sentencing, it also waived its right to appeal the defendant's sentence as "excessively lenient." *Id.* at 822. The Nebraska Court of Appeals determined that the State indeed "live[d] up to its agreement to 'remain silent' at the time of sentencing." *Id.* at 824. Summarizing, and relying on, *Santobello*, *Benchimol*, and other federal circuit law, the Nebraska Court of Appeals determined:

> Given the general principle that courts are not to rewrite contracts to include what the parties did not, we find that what the plea agreement between Thompson and the State did not say is of the greatest import in resolving this issue when we note the general principle that the waiver of the right to appeal must be express and unambiguous. . . . Accordingly, in the instant case, agreeing to "remain silent at sentencing" does not clearly and unambiguously give up the State's statutory right to seek appellate review.

*Id.* at 826-27. In light of these general principles, the Nebraska Court of Appeals held:

> In the present case, the very simple and basic plea agreement, albeit oral but on the record, was not festooned with a waiver of the State's right of appellate review. There is such a substantial and longstanding body of Nebraska jurisprudence according substantial discretion to the sentencing judge that citation of authority is superfluous. But, if that discretion is to be unfettered and "unexaminable" discretion, the State's waiver of its right of appellate review must actually be part of the

>   agreement rather than judicially created from a plea agreement that fails to even mention such a condition. In short, we enforce the agreement that was made rather than expand it by judicial fiat, and we hold that the State did not waive its statutory right to appellate review of the trial court's sentences.

*Id.* at 828.

>   2.   *The Merits of Brown's Claim One*

The parties have submitted State Court Records including the depositions of the two prosecutors and both of Brown's trial attorneys involved in negotiating the plea agreement, and the transcripts of the plea and sentencing hearings. These documents clearly show that there was no agreement that the prosecution remain silent at sentencing. However, even if there was such an agreement, the State fulfilled its promises and there was no waiver of the State's right to appeal.

The original information charged Brown with four counts, including first-degree murder, use of a deadly weapon to commit a felony, and two first-degree assault charges. (Filing No. 17-1, Attach. 1, at CM/ECF p. 13.) After the plea negotiations, Brown pleaded no contest to one charge, second-degree murder, and the State dismissed all remaining charges. (Filing No. 29-1, Attach. 1, at CM/ECF pp. 4, 16.) At the plea hearing, the Douglas County District Judge informed Brown that "the possible penalty" on the single, second-degree murder conviction was a minimum sentence of 20 years imprisonment and a maximum sentence of life imprisonment. (*Id.* at CM/ECF p. 9.) Brown stated that he understood the penalty. (*Id.*) The Douglas County District Judge also confirmed with Brown that no other promises had been made and that the reduction and dismissal of the charges was the entire plea agreement. (*Id.* at CM/ECF pp. 10-11.)

Regarding the plea negotiations between the parties, the lead prosecutor, Sandra Denton ("Denton"), testified as follows:

6

> Q. What do you remember talking to [Brown's] counsel about?
> A. I remember [Brown's counsel] being very interested in having the time run concurrent with [Brown's] federal time and we absolutely would not agree to that. And he wanted that a part of the plea agreement. I remember that specifically.

(Filing No. 29-2, Attach. 2, at CM/ECF p. 11.) Denton also testified that she handled the sentencing hearing alone, and that she "did not make any argument" at Brown's sentencing hearing. (*Id.* at CM/ECF pp. 14-15.) Regarding the issue of standing mute at sentencing, Denton testified:

> Q. Ms. Denton, did you imply to [Brown's counsel] that if they accepted the plea agreement that you – that the County Attorney's Office would leave the sentencing to the purview – leave the sentencing to the purview of the sentencing judge?
> A. No.
> ...
> Q. Have you ever made, as part of your plea agreement, that you would stand mute at sentencing?
> A. It wasn't that we – it was my understanding from the office that we weren't to agree to stand mute. It was that we would agree not to recommend any specific type of sentence and that would be what I would have negotiated with defense counsel. So I have done that before. It wasn't a part of my regular practice but I certainly have agreed to not recommend any particular sentence.
> Q. And when you made that recommendation, would you always put it on the record or would it just understood?
> A. Oh, no, that would go on the record.

(*Id.* at CM/ECF pp. 18-20.) In short, Denton testified that, as part of the plea agreement, the State did not promise to stand silent at sentencing, or to recommend any sentence, including a concurrent sentence. (*Id.* at CM/ECF pp. 24-25.) However, Denton testified that it was the "general policy" of the Douglas County Attorney's Office that sentencing "was within the purview of the judge," and she rarely

commented at sentencing. (*Id.* at CM/ECF pp. 6-7, 19.) Denton's co-counsel, Thomas McKenney's, testimony was generally the same with regard to the plea negotiations and agreement. (Filing No. 29-3, Attach. 3, at CM/ECF pp. 10-17.)

The deposition testimony of Brown's attorneys is similar. In particular, Brown's trial attorney, Thomas Olsen ("Olsen") testified that it was his understanding that the State planned to leave the issues of sentencing "to the Judge" and "whatever the Judge decides, he decides." (Filing No. 29-5, Attach. 5, at CM/ECF p. 12.) In short, "when it came to sentencing, it was just we're not going to – we're not going to say anything. And I guess it was taken at face value that that's what was going to happen, and that's what did happen." (*Id.* at CM/ECF p. 25.) Olsen summarized the plea agreement as follows:

> I guess at that point in time, I was confident that the plea negotiations and the deal that was reached was just that. That he was pleading to second degree, that the remaining charges would be dismissed, and that the State was not going to have any specific comment with respect to sentencing and that's what it was. But the gist of the plea agreement was obviously the reduction in the charge.

(*Id.* at CM/ECF p. 41.) Olsen's co-counsel, Anthony Troia ("Troia") likewise testified at his deposition that:

> I don't specifically remember what was discussed, the sentencing, other than reviewing the matter with Mr. Olsen. And it was his indication that Miss Denton or Mr. McKenney said whatever the Judge does, he does, as far as that goes. So in other words, I interpreted it to mean that they weren't going to say anything at the time of sentencing, which I believe they didn't.

(Filing No. 29-6, Attach. 6, at CM/ECF p. 11.) Troia further testified that "standing mute at sentencing" was the State's "normal practice." (*Id.* at CM/ECF p. 12.)

The deposition transcripts, along with the transcript of the plea hearing, show that there was no specific agreement for the State to remain silent at Brown's sentencing. (Filing No. 29-1, Attach. 1, at CM/ECF pp. 1-18.) Regardless of whether an agreement existed, the State did indeed remain silent at sentencing. (Filing No. 21-1, Attach. 1, at CM/ECF pp. 1-9.) In the entire sentencing hearing, the State said two sentences, "Yes, Your Honor. Rolisha Easter, who is the mother of the deceased." (*Id.* at CM/ECF p. 4.) Thus, aside from the introduction of the victim's mother, the State was silent. In addition, the State's right to appeal was not discussed as part of the plea negotiations, and a careful review of the depositions, and the plea and sentencing hearing transcripts, shows that the State did not waive its statutory right to appeal Brown's sentence.

In light of the law and the facts, I find that there was no agreement for the State to remain silent at sentencing. However, even if such an agreement existed, the State fulfilled its part of the bargain. Further, to the extent such an agreement existed, under federal law and Nebraska law, that agreement did not waive the State's statutory right to appeal Brown's sentence as excessively lenient. Thus, while the State must honor its plea agreements, this court will abide by the Supreme Court's statement and will not "imply as a matter of law a term which the parties themselves did not agree upon." *Benchimol*, 471 U.S. at 456. As such, Brown's Claim One is dismissed with prejudice.

**B.     Claim Two**

Brown's arguments in his second claim are that his trial counsel was ineffective for failing to object to the State's appeal of his sentence as violating the plea agreement and for incorrectly informing him about the plea bargain. I find both arguments unpersuasive.

   *1.     Applicable Law*

9

Ineffective assistance of counsel claims are reviewed under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668, 694 (1984). *Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687; *see also Bryson v. United States*, 268 F.3d 560 (8th Cir. 2001); *Williamson v. Jones*, 936 F.2d 1000, 1004 (8th Cir. 1991).

The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Strickland*, 466 U.S. at 687-88. In conducting such a review the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The second prong requires the petitioner to demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Hubbeling v. United States*, 288 F.3d 363, 365 (8th Cir. 2002). A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (quoting *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988)). Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation are virtually unchallengeable" in a later habeas corpus action. 466 U.S. at 689.

  2. *The Merits of Brown's Claim Two*

As set forth above, the record shows that there was no agreement that the State would remain silent at Brown's sentencing. However, even if such an agreement existed, the State fulfilled its agreement. At no time did the State agree to waive its statutory right to appeal Brown's sentence as excessively lenient. Because Brown's Claim One is not meritorious, his counsel cannot be ineffective for failing to object on those non-meritorious grounds or for failing to inform him of an agreement that

did not exist. Further, Brown could not have been prejudiced by such conduct. *Kitt v. Clarke*, 931 F.2d 1246, 1250 (8th Cir. 1991) (citing *Meyer v. Sargent*, 854 F.2d 1110, 1115-16 (8th Cir. 1988)). In light of the court's findings on Claim One, Brown's Claim Two will be dismissed with prejudice.

IT IS THEREFORE ORDERED that:

1. the Petitioner Terron Brown's Petition Under 28 U.S.C. § 2254 For a Writ of Habeas Corpus (filing no. 1) is dismissed with prejudice.

2. a separate judgment will be entered in accordance with this Memorandum and Order on Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus.

Dated August 31, 2011.

                              BY THE COURT

                              s/ Warren K. Urbom
                              United States Senior District Judge